1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| SHERRY THERESA SALCIDO, | Case No. EDCV 16-02493-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

18
**I.    INTRODUCTION**

19
Plaintiff Sherry Theresa Salcido ("Plaintiff") challenges the Commissioner's

20
denial of her application for a period of disability and disability insurance benefits

21
("DIB").   For the reasons stated below, the decision of the Commissioner is

22
REVERSED and REMANDED.

23
**II.    PROCEEDINGS BELOW**

24
On July 23, 2013, Plaintiff filed a Title II application for DIB alleging

25
disability beginning December 31, 2008.  (Administrative Record ("AR") 79; *see*

26
AR 68.)   Her application was denied initially on December 13, 2013, and upon

27
reconsideration on March 13, 2014.  (AR 93-96, 102-05.)   On March 24, 2014,

28

Plaintiff filed a written request for hearing, and a hearing was held on April 29, 2015. (AR 28, 107.) Represented by counsel, Plaintiff appeared and testified, along with a medical expert and an impartial vocational expert. (AR 30-67.) On May 14, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from December 31, 2008 through December 31, 2013, the date last insured. (AR 23.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Plaintiff filed this action on December 2, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff did not engage in substantial gainful activity from December 31, 2008, her alleged onset date (AOD), through December 31, 2013, her date last insured. (AR 12.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: obesity; bilateral wrist pain status-post carpal tunnel release; headaches without pathology; left knee pain status-post open reduction internal fixation left tibial plateau fracture; left foot plantar fasciitis; arthritis of the left ankle; right foot problems; lumbago with chronic low back pain; and degenerative disc disease of the cervical spine. (*Id*.) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 14.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[P]erform less than the full range of light work . . . . Specifically, the claimant can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; the claimant can stand and/or walk six hours in an eight-hour workday; the claimant can sit six hours in an eight-hour workday; the claimant can frequently push and/or pull with the right lower extremity, but can only occasionally push and/or pull with the left power extremity; the claimant can perform postural activities, such as climbing, balancing, stooping, kneeling, crouching, and crawling, on an occasional basis, but she cannot climb ladders, ropes, or scaffolds; the claimant is limited to frequent bilateral upper extremity handling and fingering; the claimant cannot work around unprotected heights; and the claimant must avoid concentrated exposure to extreme cold, vibration, and hazards, such as machinery and heights.

(AR 14-15.)

At **step four**, based on the Plaintiff's RFC and the vocational expert's testimony, the ALJ found that through the date last insured, Plaintiff was capable of performing past relevant work as a security guard. (AR 23.) Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the date last insured, and thus the ALJ did not proceed to **step five**. (*Id.*)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.    DISCUSSION

Plaintiff raises two issues for review:  (1) whether the ALJ's RFC assessment is supported by relevant medical evidence in the record; and (2) whether the ALJ failed to properly consider her subjective complaints and erred in finding them not credible.  (Joint Stipulation ("JS") 3, Dkt. No. 20.)  The Commissioner contends that the RFC is supported by substantial evidence and that the ALJ properly evaluated Plaintiff's credibility.  (JS 14, 32.)  For the reasons below, the Court agrees with Plaintiff on the issue of credibility and remands on that ground.

### A.    The ALJ's Credibility Determination Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ's finding that her subjective complaints are not fully credible is unsupported by or inconsistent with the medical evidence in the record.  (JS 16.)  The Commissioner argues that the ALJ's reasons for finding Plaintiff not fully credible are clear and convincing, supported by substantial

4

evidence. (JS 23.)

## 1. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she had been disabled since 2008. (AR 46.) Her symptoms worsened, and by 2011, she had "constant" instability, pain, and swelling of her left ankle. (AR 46-47.) Plaintiff testified that her ankle swells and hurts after about 20 minutes of standing, and then she needs to lie down and elevate it. (AR 47.) She later testified that she could stand for only about 10 or 15 minutes before needing to sit or lie down. (AR 51.) Plaintiff's ankle also swells when she sits in a chair with her foot on the floor. (AR 47.) She can sit for about a half hour, but needs to "sometimes get up" or position her right leg under her left leg. (AR 51-52.) Plaintiff testified that in order to get up, she needs to lift her left leg because her knee "pops out of place." (AR 52.) She thinks her knee is getting worse. (*Id.*)

Plaintiff testified that she was given crutches in October 2011, and eight days later, she was given a CAM walker boot, which she wore for "a few months." (AR 48.) Plaintiff testified that she tried going for walks, but she "couldn't make it" because her feet would start to hurt when walking to her mailbox and back. (*Id.*) She saw her doctor again because when she walked, her ankle would twist and she would fall down. (*Id.*) Plaintiff testified that she was then sent to have a special brace made, which she currently wears. (AR 49.) Plaintiff "tr[ies] to walk" and uses a cart or "lean[s] on the basket" when grocery shopping, but "it still hurts [her] and gets swollen." (*Id.*) Plaintiff testified that she has been using a cane for about three years. (*Id.*) She does not remember who gave her the cane, but thinks her doctor and physical therapy each gave her one. (*Id.*)

Plaintiff testified that she has been receiving several injections for pain: "three or four" on each side of her head for her headaches and migraines, some in her knee for pain and swelling, and some in her left foot. (AR 50.) She received the injections "about every three months," but only when her headaches last for two

5

or three days. (AR 50-51.) Plaintiff testified that she last received injections for her knee and foot at the end of the previous year. (AR 51.)

Plaintiff testified that most days, she does "normal routine," washes her face, and tries to make food for her husband, but she needs to take breaks. (AR 52.) She will "do a little bit" before taking a break, and her husband will help her when she cannot do something. (AR 52-53.) Plaintiff testified that "constantly throughout the day," she will sit at the table until she feels better or until the pain or swelling goes down, then will "get up and start again." (AR 53.) For the previous few years, Plaintiff needed to lie down at some point during each day. (AR 54.) Plaintiff testified that it had been over six years since she had a day without needing to lie down. (AR 53-54.)

Plaintiff testified that she had surgery on both hands six years earlier. (AR 54.) She continued to have symptoms in her left hand, but her right hand was worse and was getting to be as bad as it was before surgery. (*Id.*) Plaintiff testified that she now gets "shooting pains that go all the way up to [her] shoulder." (*Id.*) She testified that she could do tasks such as picking up items and placing them in little boxes for about 10 or 15 minutes before her hands would swell and hurt. (AR 55.) When that happens, Plaintiff takes pain medication and massages her arm with an electrical machine that her doctor gave her. (*Id.*) Plaintiff testified that her doctor has talked about doing another surgery, but said it was her decision. (AR 56.) Plaintiff is "thinking about it" because "it's getting worse." (*Id.*)

Plaintiff testified that her headaches "are staying about the same" and would interfere with her ability to work because she gets dizzy and starts vomiting. (AR 56-57.) Plaintiff testified that she would need to take her medicine, lie down, and usually sleep for about two hours before feeling better. (AR 57.) Plaintiff stated that she had a migraine headache "right now" at the hearing, which was hurting her eyes and her forehead "all the way down to [her] temples." (*Id.*) Plaintiff testified that she gets headaches almost every other day, about three or four times a week.

(AR 58.) Some headaches last more than two days. (*Id.*)

Plaintiff testified that she also has depression and anxiety, which are "getting worse." (AR 58.) She currently takes medication for her depression. (*Id.*) Plaintiff testified that she saw her previous doctor, Dr. Don, for therapy for about six months. (AR 58-59.) Plaintiff testified that her depression interferes with her ability to concentrate. (AR 59.) She sometimes breaks down, starts crying, and can't control herself. (*Id.*) Plaintiff testified that about three or four times a month, her depression is so bad that she does not leave her house or bedroom. (AR 59-60.) Nothing triggers her depression; "it just happens," and within minutes, she can go from "happy and laughing" to crying. (AR 60.)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 16.) The ALJ relied on the following reasons: (1) activities of daily living; and (2) lack of objective medical evidence to support the alleged severity of symptoms. (AR 16-17.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Activities of Daily Living

The ALJ found that the record reflected "inconsistencies regarding the claimant's functional abilities," noting that treatment records "suggest somewhat normal daily activities," including caring for Plaintiff's infant grandson and engaging in regular exercise. (AR 16.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff cared for her infant grandson does not detract from her overall credibility, as the record does not show that this consumed a substantial part of Plaintiff's day. In fact, the record is devoid of any details about the extent of her childcare duties. Only two medical progress notes from April 2013 and July 2013 report, "Patient states she takes care of her infant grandson." (AR 369, 411-12.) Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily

8

transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff stated that she needs rest periods every day, and when she cannot do something, her husband helps her. (AR 53-54.) Without additional information about the nature of Plaintiff's childcare activities, this cannot be the basis for an adverse credibility finding. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that, with almost no information in the record about the claimant's childcare activities, "the mere fact that [the claimant] cares for small children does not constitute an adequately specific conflict with her reported limitations").

The ALJ also noted that during multiple treatment visits, Plaintiff reported regularly exercising "at a moderate to strenuous level." (AR 16.) Specifically, on three visits, Plaintiff reported exercising 100 or 120 minutes total per week; on two visits, she reported exercising 40 minutes three or four times a week; and on one visit, she reported exercising 50 minutes three times a week. (AR 264, 363, 410, 417, 466, 488.) This amount of time does not constitute a substantial part of Plaintiff's day. Additionally, the record does not contain information about the nature of Plaintiff's exercise activities. Although the ALJ noted that Plaintiff reported "moderate to strenuous" exercise to her treating physicians, an apparently standardized form from Plaintiff's medical provider identifies "a brisk walk" as an example of what qualifies as "moderate to strenuous exercise." (AR 494.)

Plaintiff's treating physicians also regularly advised her to engage in some physical exercises related to her treatment. (*See, e.g.*, AR 368 ("get regular aerobics exercise – non-impact"), 370 ("recommend ice, calf stretching, cross training exercises"), 374 ("Begin a strengthening and conditioning program," with instructions for performing leg lifts).) Because the record merely states that Plaintiff reported exercising—without evidence of what, exactly, her exercise activities entailed or how they were performed—it is unclear whether this activity is transferrable to a work setting. *See Vertigan*, 260 F.3d at 1050 (some activities "are not necessarily transferable to the work setting with regard to the impact of pain" because "[a] patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved").

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting pain testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility. Accordingly, remand is warranted on this issue.

### B. The Court Declines to Address Plaintiff's RFC Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred in the RFC assessment. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the

ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C.    <u>Remand For Further Administrative Proceedings</u>

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount the credibility of Plaintiff's subjective testimony.

On remand, the ALJ shall reassess Plaintiff's subjective allegations. The ALJ shall then reassess Plaintiff's RFC in light of the credibility reassessment and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V.    CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 27, 2017

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**